# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3991

_____

Sharon Elder-Keep,        *
       *
             Appellant,        *
       *    Appeal from the United States
       v.        *    District Court for the
       *    District of Nebraska.
Troy Aksamit, Individual capacity;        *
Jerome Thraen, Sgt., Individual        *
capacity and in their official capacities        *
as Police Officers; City of Lincoln,        *
       *
             Appellees.        *

_____

Submitted: May 19, 2006
Filed: August 21, 2006

_____

Before BYE, HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

David B. Keep sued police officers Troy Aksamit and Jerome Thraen, in their individual and official capacities as police officers for the City of Lincoln, Nebraska ("the City"), alleging that they used excessive force against him in violation of 42 U.S.C. § 1983.[1] In a summary judgment motion on the individual capacity claim, the

_____

[1]David B. Keep died on December 21, 2004, of causes unrelated to the instant case. Despite Keep's death, his cause of action survives, as pending actions for personal injury do not abate by death of the plaintiff under Nebraska Law. Neb. Rev.

officers asserted that qualified immunity shielded them. The district court[2] granted this motion for summary judgment after excluding two of the plaintiff's affidavits filed in opposition to the motion. After denying several other of the plaintiff's motions, the district court ultimately granted the police officers' second motion for summary judgment on the official capacity claim. Sharon Elder-Keep, acting as administrator of Keep's estate, timely filed this appeal. We affirm.

## I. *Background*

Elder-Keep's allegations arose from an altercation between Keep and the officers following a traffic stop. Keep, while transporting Elder-Keep to the hospital, passed Officer Thraen of the Lincoln Police Department ("LPD"), who noticed Keep's vehicle had no license plate. Thraen activated his patrol car's overhead lights and pursued Keep's van for approximately 18 blocks. Thraen ordered Keep to stop, but Keep appeared to ignore the officer, who was unaware that Keep had requested a police escort through Elder-Keep's son, A.J.

Keep stopped at a traffic light and, as the light turned green, Thraen used his public address system to instruct Keep to pull over to the right of the road. Instead, Keep accelerated. Assuming that Keep was fleeing, Thraen activated his siren. Keep apparently ignored the officer, drove through a red light, and finally stopped at the entrance to the hospital. Thraen, still in pursuit, pulled his patrol car in front of Keep's van.

Officer Aksamit observed Thraen, activated his overhead lights in an attempt to stop Keep's van, and joined in pursuit of Keep. Aksamit recognized Keep as

Stat. § 25-1402 (1995). Sharon Elder-Keep, Keep's wife and administrator of his estate, was substituted as the plaintiff in the instant action.

[2]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

someone he had seen in connection with a disturbance at a Lincoln restaurant approximately two hours earlier. At that time, Aksamit believed Keep was intoxicated. Aksamit saw Keep's vehicle run the stop light and then pursued the van into the hospital parking lot where he parked his patrol car behind the van. Aksamit testified that he never heard any radio dispatch regarding a possible medical emergency in Keep's vehicle.

Although their accounts differ substantially,[3] neither party disputes that Aksamit grabbed Keep from behind, took him to the ground, causing the front of Keep's body to hit the concrete, and then handcuffed Keep.

After the incident, Keep filed a § 1983 action against Thraen and Aksamit in their individual and official capacities. Thraen and Aksamit filed a motion for summary judgment on the individual capacity claim, alleging that they were entitled

---

[3]The officers' version of events is as follows: Aksamit told Keep to remove his hand from his coat pocket and get back into the van. Keep did not comply but instead proceeded towards Aksamit and then turned and moved around the rear of the van. Aksamit repeatedly told Keep to remove his hand from his pocket, put his hands on his head, and lie on the ground, but Keep failed to comply with his commands. Aksamit grabbed Keep from behind, took Keep to the ground, causing the front of Keep's body to hit the concrete, wrestled Keep's hand out of his pocket, and placed Keep in handcuffs. Keep had no weapon on his person. Just prior to Aksamit exiting his vehicle and taking Keep to the ground, Thraen heard a radio dispatch regarding a possible medical emergency in Keep's vehicle.

Elder-Keep's affidavit presents a substantially different picture. According to Elder-Keep, Keep exited the van at the hospital, put his arms up, and called for help. Keep's pockets were sealed shut, and he had nothing in his hands. No officer gave any orders or directions to Keep. Elder-Keep saw Thraen exit his vehicle before Aksamit exited his vehicle. Keep went around the van from behind and opened the passenger door. Then, Aksamit grabbed Keep from behind, threw him to the ground, and kicked him and hit him as he lay silent and motionless. Elder-Keep alleges that Keep suffered a variety of physical injuries as a result of Aksamit's use of force.

to qualified immunity. In opposition to summary judgment, plaintiff's counsel electronically filed the purported affidavits of Sharon Elder-Keep and A.J. Elder, who witnessed some of the evening's events.

The district court, however, did not consider the affidavits in making its summary judgment ruling. The court ruled the affidavits inadmissible because the electronically-filed affidavits "b[ore] no signatures or evidence of having been executed before a notary public" and because the affidavits were "at times contradictory with the allegations in the Amended Complaint itself." The district court thus "disregar[ed] [the] incompetent evidence when ruling on the Defendants' Motion."

Twenty-five days after the district court granted Thraen's and Aksamit's summary judgment motion, plaintiff's counsel filed a motion under Rule 60 of the Federal Rule of Civil Procedure, asking the district court to reconsider its exclusion of the electronically-filed affidavits. Plaintiff's counsel submitted faxed copies of purported affidavit signature pages signed by Sharon Elder-Keep and Allen Peithman, Jr. However, discrepancies existed between the later faxed "copies" and the initial electronically-filed signature pages. The date that Sharon Elder-Keep's signature was notarized on her faxed affidavit signature page differed from the date that it was purportedly notarized on the earlier, electronically-filed signature page. Plaintiff's counsel also submitted his own affidavit, explaining that the person identified as "A.J. Elder" in the previous electronically-filed "affidavits" of Sharon Elder-Keep and A.J. Elder was actually "Allen Peithman, Jr." Plaintiff's counsel explained that he had no knowledge that A.J.'s last name was actually "Peithman" until A.J. informed him after A.J. faxed the affidavit back to him.

The district court treated Elder-Keep's motion as a motion for reconsideration, stating that Rule 60 applies only to relief from final judgments or orders. The district court's previous summary judgment was not a final order. According to local rules, a

motion for reconsideration must be filed no later than ten days after the district court files its order, unless the party demonstrates good cause for a later filing. Because Elder-Keep's motion for reconsideration was filed 25 days after the order, the district court considered the motion late and ruled that Elder-Keep failed to show good cause for the delay. While Elder-Keep filed other motions, they were denied.

Thraen and Aksamit then filed a second motion for summary judgment on the official capacity claim. Elder-Keep's response to the motion was due on Friday, September 9, 2005. However, she filed a motion to extend the deadline on September 6, 2005, noting that her attorney had arranged depositions for September 7, 2005. She hoped to file the depositions with the court by September 23, 2005, a week before discovery closed in the case. Thraen and Aksamit waived any objections to the motion to extend.

Because the district court had not yet granted the motion to extend, on September 12, 2005, Elder-Keep filed all evidence in her possession, as well as an "interim" index. She made reference to the depositions that were taken on September 7 and to the depositions to be taken on September 15. Thraen and Aksamit then filed a motion to strike on September 22, 2005, arguing that some documents in Elder-Keep's index of evidence were not identified and authenticated by affidavit. On September 26, 2005, the district court denied Elder-Keep's motion to extend as moot. The court concluded that it need not reconsider its denial of Elder-Keep's motion to extend because, even if it had granted the motion, the extension would have expired on September 23, 2005. On October 4, 2005, the district court granted the motion to strike, stating that Elder-Keep failed to respond to the motion.[4]

---

[4]The District of Nebraska docket report reveals that Elder-Keep did file an objection to the motion to strike on October 4, 2005.

The district court then granted the second motion for summary judgment to Thraen and Aksamit, stating that Elder-Keep failed to prove "an unconstitutional policy or custom . . . that in any way contributed to Keep's injuries."

## II. *Discussion*

Elder-Keep appeals, arguing that the district court erroneously: (1) excluded the electronically-filed affidavits; (2) denied the Rule 60 motion; (3) denied the motion for reconsideration; (4) denied the motion to expedite deadlines and motion to extend deadlines; (5) granted summary judgment to Thraen and Aksamit; (6) denied her second motion to extend; and (7) denied her second motion for reconsideration and leave to submit additional evidence.

## A. *Exclusion of Affidavits*

Elder-Keep argues that the district court erred by excluding two electronically-filed affidavits despite no objection from Thraen and Aksamit. She contends that the district court's sua sponte exclusion of the affidavits was in violation of the local rules, this court's rules, and applicable case law.

Federal Rule of Civil Procedure 56 governs summary judgment. In particular, Rule 56(e) requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." While Rule 56(e) only states that papers referred to *in* the affidavit must be "sworn," an affidavit, by definition, is "a statement reduced to writing and the truth of which is *sworn* to before someone who is authorized to administer an oath." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (emphasis added).

In addition, 28 U.S.C. § 1746 mandates that the affiant declare, under penalty of perjury, that the facts contained in the affidavit are true. Therefore, "[a]ffidavits are admissible in summary judgment proceedings [only] if they are made under penalties

of perjury," meaning that a district court may properly reject unsworn documents. *Id.* (citing 28 U.S.C. § 1746).

Here, the affidavits lacked signatures and attestation before a notary public. Thus, the affiants failed to execute their affidavits under penalty of perjury as mandated by § 1746. Therefore, we hold that the district court was authorized to exclude sua sponte such affidavits from its consideration of the first summary judgment motion.

## B. *Rule 60 Motion*

Elder-Keep's second argument is that the district court improperly treated her Rule 60 motion as a motion for reconsideration. Elder-Keep contends that the court erred because filing electronically-filed affidavits without signatures qualifies as "mistake, inadvertence, surprise, or excusable neglect" under Rule 60. Furthermore, she maintains that a Rule 60 motion properly applies to a motion filed in response to a non-final order.

The Federal Rules of Civil Procedure "do not mention motions for reconsideration." *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999). However, we have determined that motions for reconsideration are "nothing more than Rule 60(b) motions when directed at non-final orders."[5] *Anderson v. Raymond Corp.*, 340 F.3d 520, 525 (8th Cir. 2003) (citing *Broadway*, 193 F.3d at 989). We review a district court's denial of a motion for reconsideration for an abuse of discretion. *Id.*

---

[5]The plain language of Rule 60 states that it applies to "a final judgment, order, or proceeding." The district court "may" relieve a party from such an order when, for example, the party demonstrates "mistake, inadvertence, surprise, or excusable neglect" or "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(1), (6).

-7-

In the present case, the district court had not entered a final judgment or order when Elder-Keep filed her Rule 60 motion. The district court's grant of summary judgment to Thraen and Aksamit based on qualified immunity in their individual capacities did not resolve whether liability existed in their official capacities. *See Erickson v. Holloway*, 77 F.3d 1078, 1081 (8th Cir. 1996) (holding that no "final order" existed where the district court granted summary judgment to officials in their individual capacities based on qualified immunity). Because this grant of summary judgment was a non-final order, the district court properly characterized Elder-Keep's motion as a motion for reconsideration.

Under the local rules for the United States District Court for the District of Nebraska, a party "must file a motion for reconsideration of an order no later than ten (10) days after the court files the order, unless the party shows good cause for late filing." NECivR 60.1(b). Here, the district court entered its non-final order on January 4, 2005. Elder-Keep did not file her motion until January 29, 2005—25 days *after* entry of the court's order.

In addition, the local rules provide that motions for reconsideration are disfavored and will ordinarily be denied unless the party demonstrates manifest error in a prior ruling or sets forth new facts or legal authority that could not have been brought to the court's attention previously with reasonable diligence. NECivR 60.1(c). The district court concluded that Elder-Keep failed to demonstrate manifest error in the prior ruling or present new facts or legal authority to the court that she could not have previously presented with due diligence. Thus, applying the Rule 60 standard to the non-final order, the district court essentially determined, in its discretion, that Elder-Keep failed to show "mistake, inadvertence, surprise, or excusable neglect" or "any other reason justifying relief" from the order. We cannot say that the district court abused its discretion in making such a determination.

## C. *Motion for Reconsideration*

Elder-Keep's third argument on appeal is that the district court erred in denying her motion for reconsideration of its previous order denying her motion for Rule 60 relief, which the district court treated as a motion for reconsideration.

Because we find that the district court did not abuse its discretion in (1) labeling Elder-Keep's Rule 60(b) motion as a motion for reconsideration and (2) determining that Elder-Keep failed to meet the requisite criteria under both the local rules and Rule 60 in denying the motion, we also find that the district court did not abuse its discretion in denying Elder-Keep's subsequent motion for reconsideration of the denial of her Rule 60 motion.

## D. *Motion to Expedite and Motion to Extend*

Elder-Keep's fourth argument is that the district court erroneously denied her motion to expedite deadlines and motion to extend. According to Elder-Keep, the district court denied her Rule 60(b) motion on February 14, 2005. She subsequently filed her motion for reconsideration on February 24, 2005. Elder-Keep sought to expedite Thraen and Aksamit's responses to the motion to reconsider and the court's ruling on the motion to reconsider so as to avoid the 30-day deadline to appeal the Rule 60(b) motion ruling. She filed a motion to extend the time to appeal under Federal Rule of Appellate Procedure 4(a)(5)(B).

Elder-Keep's argument lacks merit. Her motion to expedite deadlines and motion to extend were predicated upon her erroneous belief that the denial of her Rule 60(b) motion constituted an appealable order. However, as previously stated, the district court's order was *not* a final order, as the claims against Aksamit and Thraen in their official capacities were still pending. Most importantly, we have already decided that Elder-Keep had no right to appeal the denial of her Rule 60 motion and motion for reconsideration. *Elder-Keep v. Aksamit*, No. 05-2093 (8th Cir. June 17, 2005) (dismissing appeal for lack of jurisdiction).

E. *Summary Judgment*

Elder-Keep's fifth argument for reversal is that the district court erroneously granted summary judgment to Thraen and Aksamit on her official capacity claims because numerous issues of fact remain unresolved. In addition, she argues that Aksamit failed to follow the City's policy on force by not giving Keep a verbal command and by initiating an assault on Keep when Keep's hands were *not* in his pockets.[6] Furthermore, she asserts that the City's policy allowing only officers trained in the use of recording equipment to operate it contributed to the alleged assault.[7] We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *Tamko Roofing Prod., Inc. v. Smith Eng'g Co.*, 450 F.3d 822, 829 (8th Cir. 2006).

A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party

---

[6]Prior to the incident, Aksamit underwent 44 hours of instruction in defensive tactics and 5.5 hours of continuing education on those topics at the LPD police academy. He also passed a series of exams that tested, among other things, his knowledge of the appropriate levels of the use of force. The LPD use-of-force policy requires that the officer use verbal commands first; soft-empty-hand techniques if a subject resists in a passive or defensive manner; hard empty-hand techniques when a subject resists in an active or aggressive manner; use of intermediate weapons if hard empty-hand techniques are ineffective; and, finally, lethal force in the defense of human life or to defend a person in immediate danger of serious bodily harm. The LPD does not retain officers who do not pass the training program and disciplines or requires follow-up training for officers who fail to comply with LPD's use-of-force policy.

[7]No recording was made of the incident, as the City's policy only allows an officer trained in the use of recording equipment to operate it, and Aksamit was not trained to operate such equipment.

in interest is the entity.") (internal citations omitted) (emphasis in original). The plaintiff must prove that the "municipality *itself* caused the constitutional violation at issue." *Kuha v. City of Minnetonka*, 365 F.3d 590, 604 (8th Cir. 2003) (emphasis in original). Therefore, to establish the liability of an official acting in his official capacity, the plaintiff must prove that "a policy or custom [of the city] caused the alleged violation." *Rogers v. City of Little Rock*, 152 F.3d 790, 800 (8th Cir. 1998). Therefore, "[a] municipality cannot be held liable *solely* because it employs a tortfeasor," meaning the municipality cannot be held liable on a respondent superior theory. *Kuha*, 365 F.3d at 603 (emphasis in original) (internal quotations and citation omitted).

An "official policy" is a "deliberate choice to follow a course of action made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy." *Id*. at 604 (internal quotations, citations, and alterations omitted).

Here, Elder-Keep has failed to allege an unconstitutional policy or custom that caused a constitutional violation of a federally protected right or privilege. Elder-Keep identifies two of the City's policies that she contends led to Keep's assault: (1) the City's policy on force and (2) the City's policy that only officers trained in the use of recording equipment may operate it.

As to the City's policy on force, Elder-Keep does not argue that the City's use-of-force policy caused the constitutional deprivation but that Aksamit's *failure to follow the policy* caused the constitutional deprivation. Elder-Keep did not dispute the evidence that the City's policies on force and training practices are designed to ensure that officers exercise any use of force in a lawful manner.

As to Elder-Keep's allegation that Keep's assault was caused by the City's policy allowing only officers trained in the use of recording equipment to operate it, she has

not shown how Aksamit's failure to use the equipment "caused" the alleged assault. As Elder-Keep herself points out, the videotape would only show the events leading up to the alleged assault. The videotape itself could not have prevented or caused the assault.

Given the nature of the issues, any factual questions remaining respecting the events at the hospital are not material. Therefore, we hold that the district court did not err in granting Thraen's and Aksamit's second motion for summary judgment.

F. *Motion to Extend*

Next, Elder-Keep argues that the district court erroneously denied her motion to extend as moot. According to Elder-Keep, at the time that her response to the second motion for summary judgment was due, she had already filed an unopposed motion to extend the deadline. However, when the district court did not issue a ruling on her motion to extend, she filed all the evidence in her possession but expressly noted that additional depositions would occur on September 7, 2005 and September 15, 2005. Thus, Elder-Keep maintains that because she properly alerted the district court that she would file late depositions, the district court abused its discretion in holding that the motion to extend was moot. We review a district court's denial of a motion to extend for an abuse of discretion. *See Ceridian Corp. v. SCSC Corp.*, 212 F.3d 398, 401 (8th Cir. 2000).

While Elder-Keep initially asked the district court to extend the deadline until September 23, 2005, she failed to submit an additional brief or any additional evidence as of September 26, 2005, the date on which the district court denied Elder-Keep's motion to extend as moot. Therefore, we agree with the district court that even if it had granted Elder-Keep's motion to extend, she failed to meet her requested deadline of September 23, 2005. The district court's treatment of the motion as moot was not an abuse of discretion.

G. *Motion for Reconsideration*
*and for Leave to Submit Additional Evidence*

Finally, Elder-Keep maintains that the district court abused its discretion in denying her motion for reconsideration and for leave to submit additional evidence and a supplemental brief. According to Elder-Keep, her counsel did not receive the remaining depositions until September 27, 2005, a day after the district court's order. Therefore, she immediately filed a motion for reconsideration and for leave to file the additional evidence and supplemental brief, attaching the depositions of several witnesses.

As we previously noted, the local rules provide that the district court will ordinarily deny a motion for reconsideration unless the party demonstrates a showing of manifest error in the prior ruling or demonstrates new facts or legal authority that the party could not have previously produced with reasonable diligence to the court. NECivR 60.1(c). Elder-Keep has failed to meet this burden. Therefore, we hold that the district court did not err in denying Elder-Keep's motions.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court in all respects.

_____