# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2645

_____

David W. Sherbrooke,                    *
                                        *
            Appellant,                  *
                                        *   Appeal from the United States
      v.                                *   District Court for the
                                        *   District of Minnesota.
The City of Pelican Rapids, a           *
Minnesota municipal corporation; Scott  *
Fox, individually and in his capacity   *
as Police Chief; Scott Sachs,           *
individually and in his capacity as a   *
Police Officer; Ted Leabo, individually *
and in his capacity as Police Officer,  *
                                        *
            Appellees.                  *

_____

Submitted: March 11, 2009
Filed: August 24, 2009

_____

Before WOLLMAN, BRIGHT, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

David Sherbrooke filed this action against the City of Pelican Rapids, Minnesota (the "City"), the City's police chief, Scott Fox, and two of the City's police officers, Scott Sachs and Ted Leabo. Count One of his complaint alleged a cause of action pursuant to 42 U.S.C. § 1983, asserting violations of the First, Fourth, Sixth,

and Fourteenth Amendments. Count Two alleged a conspiracy in violation of 42 U.S.C. § 1985. Counts Three through Seven advanced claims under Minnesota law for false arrest, malicious prosecution, negligent infliction of emotional distress, common-law conspiracy, and a violation of a Minnesota statute governing consultations between persons in custody and their attorneys. Count Eight alleged that the City was vicariously liable for the alleged conduct of the police officers.

The district court denied the individual defendants' motion for summary judgment on Sherbrooke's Fourth Amendment claims relating to a traffic stop and the recording of his statements while he was in custody, and denied the City's motion for summary judgment on Sherbrooke's assertion that his arrest was caused by an unconstitutional policy. Sherbrooke voluntarily dismissed the conspiracy allegation under § 1985, and the district court dismissed all of the state-law claims. On interlocutory appeal, this court held that the individual officers were entitled to qualified immunity on the Fourth Amendment claims, and that the City was entitled to judgment on the intertwined allegation of an unconstitutional policy. *Sherbrooke v. City of Pelican Rapids*, 513 F.3d 809 (8th Cir. 2008). On remand, the district court[1] entered final judgment in favor of the defendants on all claims. Sherbrooke appeals, and we affirm.

I.

We restate the relevant facts as described in our previous opinion, and supplement those facts as necessary for disposition of the present appeal. In July 2004, Sherbrooke was driving home from his high school reunion when he was pulled over by Officer Sachs for improper use of his flashing lights. During the traffic stop, Sachs detected alcohol on Sherbrooke's breath and noticed that Sherbrooke had

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

watery eyes. Sachs asked Sherbrooke whether he had been drinking, and Sherbrooke responded that he had consumed at least four alcoholic drinks. A few minutes later, Officer Leabo arrived on the scene, and Sachs asked Sherbrooke if he would take three field sobriety tests. Sherbrooke agreed and proceeded to perform an eye test, a "walk-and-turn" test, and a "one-leg-stand" test. Sachs concluded that Sherbrooke failed the eye test when he showed a lack of smooth pursuit in both eyes, and that he failed the walk-and-turn and one-leg-stand tests by showing a lack of balance and not fully following directions.

After Sherbrooke completed the field sobriety tests, Sachs administered a preliminary screening test called a portable breath test ("PBT"). During the test, Sachs told Sherbrooke to seal his lips around the mouthpiece of the device and blow "harder" and "harder" into the machine. The PBT indicated that Sherbrooke had an alcohol concentration of .11, which exceeded the legal limit in Minnesota at that time. *See* Minn. Stat. § 169A.20, subd. 1(5) (2005). When Sachs told Sherbrooke that he failed the test, Sherbrooke was "absolutely amazed," because even though he knew he had consumed four alcoholic drinks before driving, he did not feel like he was over the legal limit. Sachs informed Sherbrooke that he was under arrest for suspicion of driving while impaired ("DWI") and transported him to the Pelican Rapids Police Department for additional testing. A search of Sherbrooke's vehicle incident to his arrest revealed a loaded Glock pistol in the driver's door compartment.

After his arrest, Sherbrooke told Sachs, "[y]ou know what, I'm under the influence," and "I had four [alcoholic drinks] within about the last hour and a half." Sherbrooke also asked Sachs "how far over" on the PBT he was, and Sachs responded that the PBT was merely a pass or fail test. In fact, the PBT issues a digital, numerical reading, and Sachs later testified that he did not want to reveal the actual number to Sherbrooke for fear that Sherbrooke would manipulate the results of future alcohol tests.

Once at the police station, Sherbrooke consented to take another, more accurate breath test called an Intoxilyzer test. Unlike the PBT, the Intoxilyzer test is admissible in court. Before taking the test, Sherbrooke asked to get a drink of water from the water fountain, but Sachs told him that he had to drink out of a glass instead. Sachs gave Sherbrooke a warm glass of water, which Sherbrooke drank. Sherbrooke then asked for something colder, but Sachs refused, saying that Sherbrooke could not consume anything else until after he completed the Intoxilyzer test.

Soon after consuming the warm water, Sherbrooke was placed under audio and video surveillance to ensure that he would not ingest anything else before taking the Intoxilyzer test. Sherbrooke remained under surveillance for a few minutes, during which he did not consume anything. Sachs then administered the Intoxilyzer test, which revealed that Sherbrooke's alcohol concentration level exceeded the legal limit for driving. During the test, Sachs could see the alcohol content rise as the amount of air liters increased, and he told Sherbrooke to blow harder and longer into the machine.

Sherbrooke was held overnight in jail and then released. Prosecutors subsequently charged Sherbrooke with driving while impaired and carrying a pistol while under the influence of alcohol, in violation of Minnesota law. *See* Minn. Stat. §§ 169A.20, subd. 1(5), 624.7142, subd. 1(5) (2005). The prosecution was first suspended, by mutual agreement of the parties, and the charges were later dismissed. Sherbrooke's driver's license was suspended for three months in a non-criminal proceeding.

II.

Sherbrooke's first argument on appeal is that the district court erred by failing to resolve his constitutional claims based on the Due Process Clause of the Fourteenth Amendment. He suggests that the district court "overlooked" these arguments

"because of the numerous facts and issues involved in the cross-motions for summary judgment." In his reply brief, Sherbrooke acknowledges that he has no grievance with the district court's resolution of his substantive due process claims, saying that the appellees' arguments on that point are "misplaced." He argues instead that the defendants violated his rights to *procedural* due process, and urges that the case should be remanded for the district court to address these contentions. He further contends that the City is liable for maintaining an unconstitutional policy that caused these alleged due process violations.

Having reviewed the proceedings below, we conclude that the district court did not overlook anything. Sherbrooke's complaint alleged a violation of his "right to due process," without elaboration. His memoranda filed in support of his motion for partial summary judgment expressly argued that the defendants violated his *substantive* due process rights. (R. Doc. 26, at 23-25; R. Doc. 57, at 9). His opposition to the cross-motion for summary judgment argued only a violation of the Fourth Amendment. (R. Doc. 49, at 21-25). The words "procedural due process" appear nowhere in these memoranda, and they appear on appeal for the first time in Sherbrooke's reply brief. There is no basis for a remand to consider supposedly "overlooked" procedural due process claims, against either the individual officers or the City.

Sherbrooke also challenges the district court's grant of summary judgment on his supplemental state-law claims of false arrest, malicious prosecution, and conspiracy. Under Minnesota law, a plaintiff who seeks to state a claim for false arrest or malicious prosecution must show that the defendants acted against him without probable cause. *Johnson v. Morris*, 453 N.W.2d 31, 36 (Minn. 1990) (false arrest); *Stead-Bowers v. Langley*, 636 N.W.2d 335, 338 (Minn. Ct. App. 2001) (malicious prosecution). Sherbrooke argues that the defendants acted against him without probable cause.

As stated by the Supreme Court of Minnesota, "[t]he test of probable cause to arrest is whether the objective facts are such that under the circumstances, a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed." *In re Welfare of G.M.*, 560 N.W.2d 687, 695 (Minn. 1997); *see Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). In this case, Sherbrooke does not dispute that when Sachs approached Sherbrooke's vehicle after stopping him for improperly using his flashing lights, he detected alcohol on Sherbrooke's breath and noticed that Sherbrooke had watery eyes. Nor does Sherbrooke dispute that he admitted to having four alcoholic drinks before driving his vehicle, or that he failed the eye test – one of the three field sobriety tests administered. These facts were sufficient to create probable cause to arrest him for driving while impaired, in violation of Minnesota law. Moreover, Sherbrooke registered .11 on the PBT, which is over the legal limit in Minnesota. Although Sachs incorrectly told Sherbrooke that the test was strictly pass or fail, when in fact it issued a numerical reading, Sherbrooke does not present any evidence that the reading on the PBT was false, manipulated, or the product of improper administration.

Sherbrooke contends that even if probable cause existed to arrest him at the scene for DWI, there was no probable cause to hold him overnight and to pursue charges for driving while intoxicated, because the results of the subsequent Intoxilyzer test were allegedly manipulated. Whatever the merits of the Intoxilyzer test, however, the officers had probable cause to arrest Sherbrooke before the test was administered. The probable cause to believe that he had committed the offense did not disappear even if the Intoxilyzer test was conducted improperly. If anything, the showing of probable cause was strengthened after the arrest, given that Sherbrooke told Sachs that he had consumed the four alcoholic drinks within "about the last hour and a half."

Because Sherbrooke's arrest was supported by probable cause, the district court properly dismissed his claims for false arrest and malicious prosecution. It follows that the conspiracy claim was also correctly dismissed, as Sherbrooke's sole

contention is that Fox, Sachs, and Leabo conspired to commit the torts of false arrest and malicious prosecution.

The judgment of the district court is affirmed.

_____