# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-3438

———————————————

Jill S. N. Schaffer; Callissa A. Schaffer

*Plaintiffs - Appellants*

v.

Bryan Beringer, in his individual capacity; Jacy Nelsen, in her individual capacity; Jessica Wade, in her individual capacity; Mark Foley, in his individual capacity; Matt Betzen, individually and in his official capacity

*Defendants - Appellees*

————————

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

————————

Submitted: October 19, 2016
Filed: November 21, 2016

————————

Before GRUENDER, BEAM, and SHEPHERD, Circuit Judges.

————————

GRUENDER, Circuit Judge.

Jill and Callissa Schaffer brought this civil rights action under 42 U.S.C. § 1983 against officers of the Vermillion Police Department ("VPD"), alleging that the

officers violated their First and Fourth Amendment rights. The district court[1] granted the officers' motion for summary judgment, and we affirm.

## I.

At approximately 12:15 a.m. on May 30, 2014, Vermillion Police Officer Mark Foley observed a car driving with a broken tail light. Officer Foley followed the car for four blocks, during which he observed no abnormal driving behavior. He then initiated a traffic stop. Eighteen-year-old Callissa Schaffer was the driver of the car, which belonged to Lee Sappingfield, who was located in the backseat. A third individual, Marilyn Wingo, was in the front passenger seat.

Officer Foley first asked to see Callissa's driver's license, which she did not have. He then asked for her name and date of birth, which she provided. During this conversation, Officer Foley smelled a strong odor of alcohol emanating from inside the car. Officer Foley contacted dispatch and requested that Officer Bryan Beringer come to his location. Officer Foley then asked Callissa to step out of the vehicle and asked her if she had been drinking, which she denied.

Officer Foley requested that Callissa take a preliminary breath test ("PBT"). Callissa declined the PBT and then called her mother, Jill Schaffer, to the scene. Meanwhile, Officer Beringer had arrived and began talking to Wingo, who admitted consuming several beers earlier even though she was only seventeen years old. Sappingfield also had consumed alcohol, but he was of legal age. Officer Beringer then walked over to Officer Foley and Callissa and observed that Callissa's face was flushed and that her eyes were watery. Neither officer could determine whether the smell of alcohol was coming directly from Callissa or from the car.

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

Jill, an attorney, then arrived at the scene. She stood between the officers and Callissa and argued that the officers had no reason to think Callissa had been drinking. Jill also threatened to file a civil rights suit against the officers. Officer Beringer explained to Jill that she was physically and verbally obstructing a police investigation and then called Sergeant Jacy Nelsen to the scene.

Sergeant Nelsen arrived with Officer Jessica Wade. Sergeant Nelsen informed Jill that she needed to either step aside or be arrested, and Jill stepped aside. Callissa was again asked whether she would take a PBT and was informed that if she refused she would be detained at the police station while they sought a warrant. Callissa again refused the PBT. Callissa and Wingo both were placed in handcuffs and frisked by Officer Wade before being driven to the VPD.

At the station, Wingo agreed to take the PBT, which revealed a blood alcohol content ("BAC") of .21. Meanwhile, Officer Foley prepared an affidavit for a search warrant to force Callissa to take the PBT. Officer Foley included in his affidavit that he could smell alcohol emanating from the car, Sappingfield performed a PBT on scene with a BAC of .05, Wingo had just performed a PBT at the station with a BAC of .21, and he noticed when speaking to Callissa that her eyes were watery and her face was flushed. A magistrate judge signed the warrant. More than two hours after the initial stop, Callissa finally performed the PBT, which revealed a BAC of .00.

On July 2, 2014, Jill was indicted for violating South Dakota's obstruction statute, SDCL § 22-11-6. She proceeded to trial and was convicted of obstructing an investigation. She did not appeal this conviction.

On September 4, 2014, Jill and Callissa Schaffer filed the complaint in this case. Pursuant to 42 U.S.C. § 1983, they alleged thirteen counts against the VPD officers for violations of various constitutional rights. The district court held that Officers Foley, Beringer, Wade, and Nelsen were entitled to qualified immunity on

all counts and thus granted them summary judgment. The district court likewise held that Police Chief Matt Betzen was entitled to summary judgment on the claims against him in both his individual and official capacities.

On appeal, the Schaffers raise the following arguments: (1) the officers unlawfully arrested Callissa when they handcuffed and detained her; (2) the officers unlawfully searched Callissa when they frisked her; (3) Officer Foley purposefully misrepresented facts in the search warrant affidavit; (4) the officers committed retaliatory perjury in Jill's obstruction trial; and (5) Chief Betzen failed to adequately train the officers. We address each of these arguments in turn.

II.

We review the district court's order granting summary judgment *de novo*, viewing the evidence in the light most favorable to the Schaffers and drawing all reasonable inferences in their favor. *See Joseph v. Allen*, 712 F.3d 1222, 1225 (8th Cir. 2013). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

A.

The Schaffers first argue that the officers violated Callissa's Fourth Amendment right to be free from unreasonable seizures. The Schaffers contend that Callissa was under arrest from the moment she was placed in handcuffs until she was released from the VPD, and they argue that the officers did not have probable cause to support this arrest. The officers assert that they are entitled to summary judgment on grounds of qualified immunity.

Qualified immunity shields government officials from liability unless their conduct "violated a clearly established constitutional or statutory right of which a reasonable official would have known." *Carpenter v. Gage*, 686 F.3d 644, 648 (8th Cir. 2012). Thus, the qualified immunity analysis is divided into two prongs: (1) whether the facts alleged establish a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Kail v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011). "If the answer to either question is no, then the [officials] are entitled to qualified immunity." *Id.* Furthermore, "we may exercise our sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (quotation omitted).

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quotation omitted). An officer has probable cause "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quotation omitted). However, "the issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996) (citations and quotation omitted). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Ulrich*, 715 F.3d at 1059 (quotation omitted).

Thus, we need not decide whether the officers had *actual* probable cause. Rather, following *Habiger v. City of Fargo*, we need only address whether the officers had *arguable* probable cause and are thus entitled to qualified immunity. 80 F.3d at 295. Because a determination that the officers had arguable probable cause would end

the inquiry, we will assume that Callissa was arrested when she was placed in handcuffs. *See United States v. Pratt*, 355 F.3d 1119, 1122 (8th Cir. 2004) ("[I]f an officer has probable cause, any inquiry into other acceptable justifications for the seizure is largely superfluous . . . .").

The legal drinking age in South Dakota is twenty-one. SDCL § 35-9-2. South Dakota's general DUI statute prohibits anyone from operating a motor vehicle if their BAC is .08 or higher. SDCL § 32-23-1. However, South Dakota's minor DUI statute prohibits drivers under the age of twenty-one from operating a motor vehicle with a BAC of .02 or higher. SDCL §32-23-21. Thus, the legal BAC limit for drivers under the age of twenty-one is significantly lower than the permissible level for drivers over twenty-one. Notably, no judicial decisions have addressed what circumstances would provide officers with probable cause to arrest a driver under the age of twenty-one for a violation of the minor DUI statute. In qualified immunity cases, this "absence of judicial guidance can be significant." *Walker*, 414 F.3d at 993.

Officers Foley and Beringer personally observed Callissa's watery eyes and flushed face, and both smelled alcohol emanating from the vehicle. *See Sherbrooke v. City of Pelican Rapids*, 577 F.3d 984, 987-88 (8th Cir. 2009) (considering watery eyes and smell of alcohol in probable cause analysis). Both passengers of the vehicle, including one minor, admitted to consuming alcohol. Given the totality of these circumstances, the relatively low .02 BAC limit under the minor DUI statute, and the absence of judicial decisions interpreting that statute, we find that the officers had at least arguable probable cause to believe that Callissa Schaffer had violated SDCL § 32-23-21. Because the officers had arguable probable cause, they are entitled to qualified immunity with respect to this claim.[2]

---

[2]The Schaffers also contend that the text of SDCL § 32-23-21, unlike that of SDCL § 32-23-1, authorizes an arrest only if there is physical evidence of a BAC of .02 or higher and not when officers have only probable cause that a driver has been drinking. However, they raise this argument for the first time on appeal, and they point to no cases interpreting the two statutes differently. Therefore, we decline to

B.

The Schaffers next argue that the officers deprived Callissa of her Fourth Amendment right to be free from unreasonable searches when she was frisked before being placed in the patrol car. They contend that the search was unreasonable because the officers had no reason to believe that Callissa posed a danger to them. The officers again assert qualified immunity as a defense.

"Under the Fourth Amendment, a warrantless search of the person is reasonable only if it falls within a recognized exception to the warrant requirement." *United States v. Chartier*, 772 F.3d 539, 545 (8th Cir. 2014) (quotation omitted). One of these exceptions allows an officer to "conduct a limited pat-down search of the individual's outer clothing for the purpose of uncovering concealed weapons if the officer has a reasonable, articulable suspicion that the person is armed and dangerous." *United States v. Gilliam*, 520 F.3d 844, 847-48 (8th Cir. 2008). Because the officers had no reason to believe that Callissa posed any danger to them, the Schaffers are correct insofar as this exception does not apply.

However, another exception to the warrant requirement is a "search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). "Such a search may include a search of the arrestee's person to remove weapons and seize evidence to prevent its concealment or destruction." *Chartier*, 772 F.3d at 545. "It is the fact of arrest that enables the officer to conduct a search, not a particularized suspicion as to the suspect's dangerousness." *Pratt*, 355 F.3d at 1121. Thus, when officers have "at least arguable probable cause" to perform an arrest, they cannot be held liable for performing a search incident to that arrest. *Meehan v. Thompson*, 763 F.3d 936, 946 (8th Cir. 2014). Because we have already determined that the officers had arguable

---

consider this argument. *See McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005) ("Absent exceptional circumstances we will not consider arguments raised for the first time on appeal.").

probable cause to arrest Callissa, they are entitled to qualified immunity on this claim as well.

## C.

The Schaffers next argue that Officer Foley deprived Callissa of her Fourth Amendment right to be free from unreasonable searches because he purposefully misrepresented facts in his affidavit for a search warrant. "A warrant based upon an affidavit containing deliberate falsehood or reckless disregard for the truth violates the Fourth Amendment and subjects the officer who submitted the affidavit to § 1983 liability." *Block v. Dupic*, 758 F.3d 1062, 1063 (8th Cir. 2014) (quotations omitted). However, "[a] showing of deliberate or reckless falsehood is not lightly met," *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010) (quotation omitted), and "[m]ere allegations of deliberate or reckless falsehoods are insufficient," *United States v. Kattaria*, 553 F.3d 1171, 1177 (8th Cir. 2009).

The Schaffers argue that Officer Foley made deliberately or recklessly false statements because he included his observation of Callissa's watery eyes and flushed face in his affidavit but not in the police report he prepared. However, Officer Foley's police report does not contradict his search warrant affidavit merely because the police report does not repeat everything stated in the affidavit. Therefore, this fact alone does not demonstrate that the affidavit contained deliberate or reckless falsehoods.

The Schaffers also argue that Officer Foley made deliberately or recklessly false statements by omitting certain facts from his affidavit. However, "[a] law enforcement official is not required to include everything he knows about a subject in his affidavit, whether it is material to a finding of probable cause or not." *Tech. Ordnance, Inc. v. United States*, 244 F.3d 641, 649 (8th Cir. 2011). Thus, omissions can vitiate a search warrant only if "(1) the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) the affidavit, if supplemented by the omitted information would not have been

sufficient to support a finding of probable cause." *Hawkins v. Gage Cty.*, 759 F.3d 951, 959 (8th Cir. 2014) (quotation omitted). Furthermore, to prove "reckless disregard," a plaintiff must "show that the omitted material would be *clearly critical* to the finding of probable cause." *Id.* (quotation omitted).

Here, the Schaffers fail to show that Officer Foley acted either intentionally or with reckless disregard with respect to the alleged omissions. They contend that Officer Foley should have included information that may have suggested Callissa was a designated driver, such as her competent driving and positive demeanor, and that he should have mentioned that none of the officers on the scene positively detected alcohol on Callissa's person. Other than mere allegations of "purposeful misrepresentation," the Schaffers present no evidence that Officer Foley omitted these facts with the intent to mislead the magistrate judge. Moreover, they fail to show that he acted with reckless disregard because none of these facts would be clearly critical to the finding of probable cause. Although the officers did not notice impaired driving and could not positively detect alcohol on Callissa's person, those facts alone would not negate their suspicions of a violation, especially given the relatively low BAC limit of .02 for drivers under the age of twenty-one. Because the Schaffers cannot show that any of these omissions were intentional or reckless, Officer Foley is entitled to qualified immunity on this claim.

D.

Jill also argues that the officers retaliated against her for engaging in speech protected by the First Amendment. To establish a First Amendment retaliation claim, Jill must show that (1) she engaged in a protected activity, (2) the officers took adverse action against her that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). Jill argues that she engaged in a protected activity by criticizing the officers and stating that she would file a civil rights suit against them. She also alleges

that the officers took adverse action against her by committing perjury during her trial for obstruction.

As a preliminary matter, we recognize that this claim may be barred by the rule expressed in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* states that, in order to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal." 512 U.S. at 486-87. Jill did not appeal her obstruction conviction, and a finding of perjury would at least cast doubt on the validity of that conviction, if not render the conviction invalid. *See United States v. Clay*, 720 F.3d 1021, 1025 (8th Cir. 2013) ("A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.") (quotation omitted). However, we need not decide whether *Heck* bars this claim, because even if the claim is not barred, Jill does not present sufficient evidence to create a genuine issue of material fact as to whether the officers committed perjury.

To commit perjury, a person must state, "intentionally and contrary to the oath, any material matter which the person knows to be false." SDCL § 22-29-1. In South Dakota, "minor discrepancies [are] not sufficient to establish perjury." *Orricer v. State*, 181 N.W.2d 461, 465 (S.D. 1970). As evidence of perjury, Jill points to four instances of the video evidence contradicting the officers' police reports and trial testimony.

First, Jill alleges that Sergeant Nelsen wrote in her police report and testified that Jill had delayed the investigation by more than two hours, but Sergeant Nelsen recanted after being confronted with the video time stamps. However, Sergeant Nelsen's police report states only that the PBT was taken more than two hours after the traffic stop, not that Jill delayed the investigation for two hours. Second, Jill contends that the video evidence is inconsistent with Sergeant Nelsen's police report statement that Jill "was interjecting with our conversations again yelling that the

vehicle was legally parked and to just leave [Sappingfield] alone." However, the video evidence is not inconsistent with Sergeant Nelsen's police report. Jill claims that the video shows that the officers initiated this interaction and that they asked Jill to sign for custody of Sappingfield's vehicle. However, the video from Officer Beringer's vehicle shows that Jill initiated this interaction when she returned to the stop, threatened to sue the officers, and complained about the treatment of Sappingfield's vehicle. Third, Officer Wade wrote in her police report and testified that Jill had brushed up against her, but she recanted after watching the video and seeing that Jill did not brush up against her. Nevertheless, Officer Wade insisted that Jill "felt close enough" to feel that Jill was brushing up against her. Lastly, Officer Beringer wrote in his police report and testified that Jill had interrupted his "attempts at talking to Callissa," but the video evidence does not show Officer Beringer actually speaking to Callissa until he asks her if she will take a PBT.

Even when viewed in the light most favorable to Jill, none of these statements suggest that any of the officers committed perjury. At most, these statements amount to minor discrepancies that would not support a finding of perjury. Thus, the officers' statements do not rise to the level of an adverse action that would chill a person from engaging in protected activity. *See Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002) (holding that multiple instances of city council embarrassing the plaintiff—including publicly scolding her at city council meetings, publicly calling her names, and circulating false information about her family—were not "sufficiently egregious" to satisfy adverse action prong). As such, the officers are entitled to summary judgment on this claim.

E.

Lastly, the Schaffers assert that Chief Betzen is liable in both his individual and official capacities for failing to adequately train, monitor, and discipline his subordinate officers. They allege that the officers have not been trained to know that handcuffing and transporting a suspect to a secured area of the VPD converts a

-11-

detainment into an arrest requiring probable cause. They also assert the existence of a VPD policy authorizing the officers to perform these arrests based only on reasonable suspicion rather than probable cause.

"A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). "The plaintiff must prove that the municipality itself caused the constitutional violation at issue." *Id.* (quotation omitted). "Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To prove the existence of a policy, a plaintiff must point to "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Further, the plaintiff must prove that the policy was the "moving force" behind a constitutional violation. *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

A supervisor's failure to train an inferior officer may subject the supervisor to liability in his individual capacity only "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010) (quotation omitted). In addition, the plaintiff must prove that the alleged failure to train "actually caused" a constitutional deprivation. *Id.* (quotation omitted).

Thus, the Schaffers can succeed on their claims only if they can create a genuine issue of material fact regarding the existence of a policy or failure to train that actually caused a constitutional violation; that is, the policy or failure to train must have actually caused Callissa to be arrested without probable cause. However, as in our analysis of the unlawful seizure claim, we need not decide whether Callissa was placed under arrest or whether the officers had actual probable cause. Rather, the

-12-

Schaffers' claim fails because (1) they fail to show the existence of a policy or failure to train; and (2) even if they did, they have failed to show that such policy or failure to train actually caused the alleged violation.

As evidence of a VPD policy or failure to train, the Schaffers point to the admissions of Officers Foley and Beringer in Jill's obstruction trial, in which they admitted that they believed at all times that Callissa was merely "detained" and "not under arrest." In addition, they point to Officer Beringer's trial testimony revealing that he believed they needed only "reasonable suspicion" to detain Callissa. The Schaffers argue that this evidence would allow a jury to conclude that a VPD policy exists that encourages VPD officers to conduct arrests with less than probable cause and that Chief Betzen failed to train his officers to the contrary.

However, these statements alone do not create a genuine issue of material fact regarding the existence of a policy or failure to train. *See Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (affirming summary judgment where officer testified that his actions were "consistent with his department's 'policies, procedures, and guidelines'" but plaintiff "[could] point to no city policy or custom—written or unwritten"). Although they cite portions of the VPD Police Manual to show that Chief Betzen is responsible for formulating policy and managing the department, the Schaffers identify no "official policy" authorizing officers to perform these types of arrests with less than probable cause. *See Mettler*, 165 F.3d at 1204. Nor do they identify any evidence showing that Chief Betzen had notice of such conduct or exhibited any "deliberate indifference" to Fourth Amendment violations. *See Parrish*, 594 F.3d at 1002.

Moreover, even if such a policy or failure to train did exist and even if a constitutional violation did occur, the Schaffers cannot show that the former caused the latter. Although "[c]ausation is generally a jury question," to find that the officers here would not have detained Callissa even if they believed that they needed probable cause would be "an exercise in pure speculation." *See Ricketts v. City of Columbia*,

-13-

36 F.3d 775, 779-80 (8th Cir. 1994); *see also Habiger*, 80 F.3d at 297 (rejecting municipal liability claim without deciding whether "actual probable cause" existed because, in any event, "inadequate training was not the proximate cause of plaintiff's alleged constitutional injury") (quotation omitted).  This is because the officers nevertheless had arguable probable cause to arrest Callissa.  Because the officers had arguable probable cause, the Schaffers cannot show that the alleged policy or failure to train was the moving force behind or the actual cause of the alleged violation.  *See Escalera v. Lunn*, 361 F.3d 737, 749 (2d Cir. 2004) ("[B]ecause each of the individual defendants had arguable probable cause, the County is likewise entitled to summary judgment in its favor.").  Therefore, Chief Betzen is entitled to summary judgment on both the official capacity and individual capacity claims.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment on all claims.

_____