# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3204

_____

KEITH WALKER,                              *
                                           *
        Plaintiff-Appellee,                *
                                           *
    v.                                     *    Appeal from the United States
                                           *    District Court for the
HERB MASCHNER; JIM HELLING;                *    Southern District of Iowa.
JOHN EMMETT; BERNARD EAVES;                *
C/O KEIGLE; C/O MERCER; DEBBIE             *
NICHOLS, UNIT MANAGER,                     *
                                           *
        Defendants-Appellants.             *

_____

Submitted:  May 15, 2001
     Filed:  November 2, 2001 (Corrected 12/28/01)

_____

Before MORRIS SHEPPARD ARNOLD, BRIGHT and BYE, Circuit Judges.

_____

BRIGHT, Circuit Judge.

The defendants, Iowa State Penitentiary officials, appeal the district court's judgment granting Keith Walker ("Walker") injunctive relief under 42 U.S.C. § 1983. Walker, an inmate at the Iowa State Penitentiary ("ISP") in Fort Madison, Iowa, is serving a life sentence for murder. Walker claims to be a Black Hebrew Israelite, which he describes as a belief system similar to Judaism. He alleges that the defendants violated the First Amendment's Free Exercise Clause by preventing him from attending Jewish religious services and possessing Jewish items within the ISP.

In his Report and Recommendation, the magistrate judge concluded that the defendants violated Walker's First Amendment rights by prohibiting him from attending Jewish services. The magistrate judge recommended granting injunctive relief permitting Walker to attend Jewish services but concluded that Walker was not entitled to monetary damages. The district court adopted the magistrate judge's Report and Recommendation and entered judgment granting Walker injunctive relief allowing him to attend Jewish services appropriate for his security classification.

In this appeal, the defendants argue that Walker's claim is barred by res judicata and collateral estoppel; that the district court erred when it determined that defendants violated Walker's First Amendment rights; that the district court erred when it granted Walker injunctive relief; and that Walker's claim is barred under 42 U.S.C. § 1997e(a) because Walker failed to exhaust his intra-penitentiary remedies. We reverse for failure to exhaust under 42 U.S.C. § 1997e(a) and dismiss the case without prejudice.

I.    BACKGROUND

In 1996, Walker and seven other ISP inmates sued ISP officials under 42 U.S.C. § 1983, claiming that their First Amendment rights under the Free Exercise Clause had been violated by the requirement that the inmates prove their Jewish faith to a Jewish consultant before they could have kosher food, Jewish books, Jewish religious apparel, or separate services from other Jewish religious groups. Shelton v. Halford, No. 4-96-CV-80336 (S.D. Iowa Aug. 11, 1997) (unpublished). In Shelton, the district court determined that the plaintiffs' First Amendment rights were not violated because their professed Jewish beliefs were not sincerely held. Shelton, slip op. at 10-11. The district court also determined that the restrictions imposed upon the plaintiffs were "reasonably related to legitimate penological objectives." Id. at 11. The court concluded that the defendants did not infringe upon the plaintiffs' religious practices because the plaintiffs were allowed to observe Jewish services,

they were permitted to keep kosher even if they were not allowed special kosher foods, and they were granted full access to religious materials that were not inconsistent with prison security regulations. The Shelton plaintiffs filed a timely notice of appeal.

Meanwhile, in 1997, Walker's security status changed because he violated a disciplinary rule. Walker was placed in "lock-up," his personal property was inventoried, and religious books found in his cell but without his name inscribed in them were taken to the chapel library. Books with Walker's name inscribed in them were held for him in his personal property box pending his release from lock-up.

In January 1998, Walker was released from lock-up and placed in "mandatory idle status," a newly-created security classification at the ISP. Mandatory idle inmates were not allowed to hold jobs and they were segregated from the general population of inmates for security reasons. Initially, mandatory idle inmates were not allowed to attend religious services because a chapel schedule for mandatory idle inmates had not been established.

Walker received a pass to attend Jewish services on January 31, 1998, but fifteen minutes after he walked into the chapel, a correctional officer told him he had to return to the cell house because mandatory idle inmates were not allowed to attend religious services. Later the same day, Walker sent an inmate memo to Treatment Director Bernard Eaves complaining about this situation and seeking an explanation. Unit Manager Debbie Nichols responded, explaining that mandatory idle inmates would be granted privileges when their status was reviewed.

On March 1, 1998, Walker sent a memo to Eaves requesting that he and other Black Hebrew Israelites be allowed to observe the upcoming Jewish holidays. Eaves denied Walker's request because Walker was not approved to attend such events. Walker did not file an inmate grievance complaint in regard to this issue.

On March 5, 1998, Walker filed a grievance because he was not allowed to attend regular general population Jewish services on January 31, 1998. Grievance Officer Dave DeGrange denied Walker's grievance, explaining that the ISP was trying to schedule religious services for Walker to attend. Walker did not appeal DeGrange's decision even though the grievance response form clearly stated that Walker could appeal the decision to the Warden within seven days.

On March 13, 1998, Walker sent two memos to Eaves. One memo again complained that he was being denied the right to attend Jewish services. Eaves responded that religious services "are now available for inmates in mandatory idle if they wish to go." In the other memo, Walker requested permission to participate in Passover, but Eaves denied the request. Relying on Shelton, Eaves explained that Walker was not allowed to participate in Passover services.

Walker filed the complaint for this case on March 24, 1998. On April 2, 1998, Walker wrote an inmate memo to Deputy Warden Jim Helling, complaining that he was only allowed to attend services with other mandatory idle inmates and explaining that he wanted to attend Jewish services with the rest of the prison population. The deputy warden responded that Walker was only approved to attend regular service with other mandatory idle inmates.

After this court affirmed the Shelton ruling on May 1, 1998,[1] Security Director John Emmett and other ISP officials determined that none of the Shelton plaintiffs would be allowed to attend Jewish services. Walker was taken off the Jewish pass list and was not allowed to possess Jewish religious items.

---

[1]Shelton v. Halford, No. 97-3502 (8th Cir. May 1, 1998) (summary affirmance under Eighth Circuit Rule 47A(a)).

On July 9, 1998, Walker filed a grievance because he was removed from the Jewish pass list. He alleged that his removal from the Jewish pass list was motivated by retaliation for the Shelton lawsuit. DeGrange denied the grievance, citing Shelton, and again told Walker that he could appeal the decision to the Warden. This time Walker did appeal to the Warden, and the Warden denied his appeal. The Warden's response instructed Walker that he could request a review of the Warden's response by writing to the Department of Corrections Grievance Coordinator. Walker did not appeal to the Department of Corrections.

In January 1999, Walker tried to purchase a Torah (in book form). After consulting with the Iowa Attorney General's office, Chaplain Del Vande Krol returned Walker's order form and check with a memo stating that, based on the Shelton ruling, Walker was not "sincere in the Jewish faith." He was, therefore, prevented from purchasing Jewish religious items, from attending Jewish services, and from checking out Jewish books from the chapel library. Walker submitted a grievance to DeGrange seeking leave to purchase Jewish religious items and attend services, and DeGrange denied Walker's grievance. In particular, DeGrange wrote, "I cannot change a Judge's Directive or Ruling." DeGrange mistakenly thought the Torah was an item of clothing rather than a book. Subsequently, Walker was allowed to possess Jewish books, but not other Jewish items.

In his complaint, Walker sought money damages and injunctive relief. The district court referred this case to the magistrate judge. In his Report and Recommendation, the magistrate judge concluded that the defendants violated Walker's First Amendment rights by prohibiting him from attending Jewish services. The magistrate judge recommended granting injunctive relief permitting Walker to attend Jewish services but concluded that Walker was not entitled to monetary damages. The district court adopted the magistrate judge's Report and Recommendation and entered judgment granting Walker injunctive relief allowing

him to attend Jewish services appropriate for his security classification. The ISP officials appealed.

II.     JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1343. We have jurisdiction under 28 U.S.C. § 1291. The defendants' notice of appeal was timely filed.

III.    DISCUSSION

We review the district court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (citing Paramount Pictures Corp. v. Metro Program Network, Inc., 962 F.2d 775, 777 (8th Cir. 1992)).

Walker's complaint is governed by 42 U.S.C. § 1997e(a) as amended by the Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, § 803, 110 Stat. 1321 (1996) ("PLRA"). That section now provides, in relevant part:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The district court acknowledged Walker's failure to exhaust but nonetheless concluded that his failure was excusable. The district court cited McCarthy v. Madigan, 503 U.S. 140, 145-49 (1992), to support its conclusion that the exhaustion requirement may be excused where (1) requiring it would result in undue prejudice

-6-

to subsequent assertion of court action; (2) the administrative agency is unable to grant the relief requested; or (3) the administrative body is shown to be biased or has otherwise predetermined the issue before it.

First, the district court determined that in addition to injunctive and declaratory relief, Walker sought monetary damages, which are not provided for through the ISP grievance procedure. The district court concluded that even if Walker properly exhausted the administrative remedies available to him, his claim for monetary damages would remain. Therefore, filing a claim for monetary damages through the prison administrative channels would be futile.

Second, the district court concluded that Walker's failure to exhaust was excusable because it would result in undue prejudice. In particular, the district court noted the significant investment of time and resources expended for Walker's case. The court cited Garrett v. Hawk, 127 F.3d 1263, 1267 (10th Cir. 1997) ("a prisoner can only exhaust administrative remedies that are actually available.").

After careful review, we conclude that Walker's claim is barred by the PLRA's exhaustion requirement. In Booth v. Churner, 121 S. Ct. 1819, 1822-25, (2001), the Supreme Court held that if a prison administrative procedure has authority to take some action in response to an inmate's grievance, the PLRA requires exhaustion of a claim for monetary damages even if monetary damages are not available in the administrative proceeding. Booth makes it plain that exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought. The district court's primary determination made in reliance on McCarthy v. Madigan, therefore, can no longer stand in light of Booth.

In this case, ISP grievance procedures could provide some remedy for Walker's complaint (for example, defendants could have permitted Walker to attend Jewish

services and possess Jewish items). Walker concedes that he failed to exhaust his available administrative remedies before filing his § 1983 action. Therefore, Walker's present claim is barred by 42 U.S.C. § 1997e(a). However, Walker may file a claim in federal court once he has fully exhausted his prison remedies.

We recognize the parties' profound frustration with this case. The defendants have struggled to balance prison security interests and inmates' First Amendment rights. The inmates who want to pursue their own religious beliefs feel stymied by prison officials' misunderstanding of their belief systems and the slow-moving grievance procedure. The district court, for its part, has invested a significant amount of time and energy in resolving these difficult and recurring disputes at the ISP at Fort Madison.

Existing case law provides guidance for resolving the demands of the First Amendment's Free Exercise Clause and the prison's legitimate security needs. The parties may find the following cases helpful in crafting a meaningful and long-term balance between the need for adequate prison security and the First Amendment rights of inmates. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 554 (1974) (determining that prisoners do not shed all constitutional rights at the prison gate); Cruz v. Beto, 405 U.S. 319, 322-23 (1972) (per curiam) (inmates enjoy the First Amendment right to freedom of religion); Turner v. Safley, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 714 (1981) (religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection). We have decided a number of prison-religion cases in the Eighth Circuit which should be helpful to the administrators of ISP and the Iowa Attorney General's Office which advises the administrators. See, e.g., Thomas v. Gunther, 32 F.3d 1258 (8th Cir. 1994) (explaining that prison officials are not free to restrict inmates' exercise of their

religion arbitrarily and unreasonably); <u>Love v. Reed</u>, 216 F.3d 682 (8th Cir. 2000) (explaining that self-proclaimed adherent of the "Hebrew religion" enjoyed First Amendment protection for the free exercise of religion and reasonable accommodation of religious dietary needs).

We suggest that an effort be made to resolve cases of this kind administratively, without the necessity of intervention of the federal courts. However, where required, the federal courts stand ready to provide relief in appropriate cases.

## IV. CONCLUSION

For the foregoing reasons, we vacate the district court's judgment and dismiss the case without prejudice. The parties shall bear their own costs.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.