# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 08-3517/08-3518

_____

| | | |
|---|---|---|
| Summer Parrish, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Sheriff Ron Ball, individually and in | * | |
| his official capacity as Sheriff of Hot | * | |
| Spring County, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | Appeals from the United States |
| | * | District Court for the Western |
| Joseph Stephen Fite, individually and in | * | District of Arkansas. |
| his official capacity as an officer for Hot | * | |
| Spring County Sheriff's Department; | * | |
| Hot Spring County Sheriff's | * | |
| Department; Hot Spring County, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: September 22, 2009
Filed: February 10, 2010

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Sheriff Ron Ball of the Hot Spring County Sheriff's Department appeals from the district court's order holding him liable in his official capacity under 42 U.S.C. §

1983 for his alleged failure to train Deputy Sheriff Joseph Stephen Fite. Appellee Summer Parrish brings a cross-appeal challenging the district court's grant of qualified immunity to Sheriff Ball in his individual capacity. We reverse on the appeal and affirm on the cross-appeal.

## I.    BACKGROUND

On December 26, 2002, Hot Spring County Sheriff Ron Ball hired Joseph Stephen Fite as a jailer. On March 14, 2003, Sheriff Ball transferred Fite from his position with the jail to the position of Road Deputy. Fite subsequently resigned his position as Road Deputy to pursue a position with the Arkansas Department of Corrections. Fite's last scheduled day with the Hot Spring County Sheriff's Department was June 11, 2003.

Although Fite operated as a law enforcement officer, he received little to no training on how to properly serve in that capacity. In fact, the only training Fite received was one to two days of riding with the deputy whose job he was hired to fill. Moreover, while Fite did receive a policy manual, he was not required to read it, and, in fact, he never actually read it. Fite was scheduled to go through the mandatory Law Enforcement Training Academy, but Fite had not yet attended the Academy at the time of the incident giving rise to this dispute. Nonetheless, Sheriff Ball permitted Fite to operate as an almost completely unsupervised Road Deputy.

Approximately one week prior to his last day, Fite came into contact with Summer Parrish while frequenting the J-Mart, a convenience store at which Parrish was employed. Parrish, who was having some legal troubles, sought Fite's advice in solving those problems. After advising her, Fite asked Parrish if she would go on a date with him. Parrish declined the offer.

Subsequently, Fite learned that Parrish had several outstanding warrants for her arrest and that Parrish owed approximately $800 in fees and fines as a result of those warrants. On June 11, 2003, Fite's last day with the Sheriff's Department, Fite drove to the J-Mart, arrested Parrish, and transported her to the county jail. While en route to the county jail, Fite informed Parrish that he would not have arrested her if she had simply agreed to go out with him.

Once they arrived at the jail, Fite bet Jason Farr, a jailer, that he could get Parrish to reveal her breasts. In furtherance of his scheme, Fite told Parrish that he could get her fines reduced if she would show him her breasts. After some trepidation, Parrish eventually complied with the request, raised her shirt, and exposed her breasts. Fite then grabbed Parrish's exposed breast. Although Fite had no formal training on the inappropriateness of sexually assaulting a woman, he admitted at trial that he knew it was wrong to touch a woman's breast without her permission. Fite also stated that he would not have pressured Parrish to expose herself, nor grabbed her breast, if Sheriff Ball had been at the jail that day.

Fite was subsequently arrested and pled guilty to sexual assault in the second degree. Sexual assault in the second degree requires sexual contact with another by forcible compulsion and is a Class B felony. Ark. Code Ann. § 5-14-125(a)(1) & (b)(1). He was sentenced to sixty-months' probation and was placed on the sex offender registry.

As relevant to this appeal, Parrish brought this § 1983 action against Fite and Sheriff Ball in their individual and official capacities. Prior to trial, Sheriff Ball moved for summary judgment, which the district court granted in part and denied in part. The court granted Sheriff Ball qualified immunity in his individual capacity, but permitted the action against Sheriff Ball in his official capacity.

After a one-day bench trial, the district court found Fite liable in his individual capacity. Fite does not appeal this finding, and we do not address his individual liability. The district court also held Fite and Sheriff Ball jointly liable in their official capacities as a result of the county's failure to train Fite. Sheriff Ball appeals the finding of official capacity liability for the failure to train Fite. In addition, Parrish brings a cross-appeal challenging the district court's grant of qualified immunity to Sheriff Ball in his individual capacity.

## II.   DISCUSSION

### A.   Official Capacity – County Liability

"We review the district court's findings of fact under the clearly erroneous standard and its conclusions of law de novo." Walker v. Maschner, 270 F.3d 573, 576 (8th Cir. 2001). As we have noted, "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Thus, to sustain the action against Sheriff Ball in his official capacity, Parrish must prove that the county "*itself* caused the constitutional violation at issue." Id. (quotation omitted). The question we are presented with then is whether Hot Spring County itself caused the sexual assault by its alleged failure to train Fite.

In general, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" on a respondeat superior theory of liability. Monnell v. New York Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). But, a local government may be subject to § 1983 liability for "inadequate training of its employees," City of Canton v. Harris, 489 U.S. 378, 388 (1989), "where (1) the [county's] . . . training practices [were] inadequate; (2) the [county] was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [the county]'; and (3) an alleged deficiency

-4-

in the . . . training procedures actually caused the plaintiff's injury." <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting <u>City of Canton</u>, 489 U.S. at 389).

Even though the training Fite received was minimal at best, that finding alone will not satisfy a § 1983 claim for failure to train. <u>City of Canton</u>, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [local government] . . . .") Instead, to satisfy the standard, Parrish must demonstrate

> that in light of the duties assigned to specific officers . . . the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need.

<u>Id.</u> at 390; <u>see also</u> <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 411 (1997) (noting that to succeed on a claim for municipal liability the "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a *particular* constitutional or statutory right will follow the decision" (emphasis added)). "In other words, [Parrish] must demonstrate that the [county] 'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'" <u>Andrews</u>, 98 F.3d at 1076 (quoting <u>Thelma D. v. Bd. of Educ.</u>, 934 F.2d 929, 934 (8th Cir. 1991)).

Applying this standard, the district court found that "Fite was not aware at the time of the incident that what he did to Parrish was a felony." <u>Parrish v. Fite</u>, No. 06-6024, 2008 WL 4495704, at *3 (W.D. Ark. Oct. 7, 2008). The district court then found that "[h]ad Fite been more familiar with the law . . . he would not have sexually assaulted the Plaintiff." <u>Id.</u> Thus, the court concluded that since it was Sheriff Ball's decision to permit Fite to operate as a law enforcement officer without first training him on the "contents of the law," it was the Sheriff's deliberate and conscious decision

not to train him that caused the incident with Parrish. Id. at *3, 5. As we read the district court's order, the court found that had Fite been trained that sexual assault was a felony, he would not have sexually assaulted Parrish. See id. Thus, the court found that it was the failure to train Fite that if he sexually assaulted a woman, he would be committing a felony, that caused the deprivation of Parrish's rights. We disagree.

We squarely addressed whether a failure to train officers not to engage in sexually deviant behavior was actionable under § 1983 in Andrews. In Andrews, officers were called to respond to reports of underage drinking taking place at the plaintiff's residence. Andrews, 98 F.3d at 1073. During that response, an officer took a particular interest in the plaintiff. Id. The chief of police noticed the officer's unusual interest in the plaintiff and warned him not to fraternize with minor females while on duty. Id. In addition, the chief of police had previously received a number of complaints regarding an unnamed officer who was impermissibly fraternizing with females while on duty. Id. Later that same evening, the officer returned to the plaintiff's house to respond to another reported disturbance. Id. During this second response, he invited the plaintiff into his police car, took her to his personal car, drove her to an isolated area, and raped her. Id. The plaintiff brought a § 1983 action against the chief of police in his official capacity for his failure to train the officer. Id. at 1074.

Notably, the officer in Andrews had received substantially more training than Fite did. Specifically, the officer had engaged in two weeks of on-the-job training and had attended the police academy. Id. at 1076-77. But, the plaintiff alleged that the officer was inadequately trained in that he was never instructed not to rape young women. We held that "[i]n light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women." Id. at 1077. We also noted, though, that even if the training procedures were "in some manner deficient," the plaintiff could not "demonstrate the close relationship necessary to conclude that the

city's failure to properly train [the officer] *caused* him to rape [the plaintiff] or even raises a question of fact as to causation." Id. (second alteration in original).

Although Fite received substantially less training than did the officer in Andrews, this case, nonetheless, presents a less egregious case of failure to train than was at issue in Andrews. In Andrews, the municipality had constructive notice of a general need to train its officers not to fraternize with women while on duty. Id. at 1073. Moreover, the chief of police had actual notice that the offending officer was taking an interest in the plaintiff. Id. Here, no deputies under Sheriff Ball had ever engaged in sexually impermissible or suggestive conduct. And nothing in Fite's record suggested that he had a proclivity to engage in sexually prurient behavior.

As in Andrews, where we found no patently obvious need to train an officer not to rape young women even in the face of actual knowledge of deviant behavior, we do not believe that there is a patently obvious need to train an officer not to sexually assault women, especially where there is no notice at all that such behavior is likely. An objectively reasonable officer would know that it is impermissible to touch a detainee's sexual organs by forcible compulsion. See Barney v. Pulsipher, 143 F.3d 1299, 1308 (10th Cir. 1998) (holding that the court was "not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates" and that "[s]pecific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior"). Moreover, Fite himself acknowledged in his testimony that he knew such behavior was wrong. Thus, while it may have been wise to tell officers not to sexually assault detainees, it is not so obvious that not doing so would result in an officer actually sexually assaulting a female detainee.

Parrish, nonetheless, asserts that even if, as we find today, there is no obvious need to train officers not to sexually assault women, that Sheriff Ball's duty to train arises specifically from Arkansas statute. Pursuant to the Arkansas Code, "all law

enforcement officers [must] complete a minimum of twenty (20) hours of training concerning sexual assaults." Ark. Code Ann. § 12-9-114(a)(1). Moreover, Arkansas Code provides that such training "shall cover . . . the laws concerning sexual assault." Id. § 12-9-114(b)(2). The record reflects that Fite did not receive any such training. Thus, avers Parrish, Sheriff Ball had a duty to train Fite on the laws concerning sexual assault.

Parrish's reliance on this section of the Arkansas Code is misplaced for two reasons. First, the statute does not create a duty for the county to train its officers on the laws concerning sexual assault. Instead, the statute mandates that the "Arkansas Commission on Law Enforcement Standards and Training" train officers on the laws concerning sexual assault "as a part of the Basic Police Training Course curriculum." Id. § 12-9-114(a)(1). As the record reflects, Fite had one year within which to complete the Basic Police Training Course. Since Fite was only employed as a Road Deputy for three months, he was not yet required to have completed that course. Second, and more fundamentally, even if the statute does imply that the county has a duty to ensure its officers are trained on the laws concerning sexual assault, this obligation does not require that the county train its officers not to violate those laws, nor does it require that officers be trained on which violations constitute felonies. Thus, despite Parrish's contentions, the Arkansas Code did not impose a duty on Hot Spring County to train its officers not to sexually assault detainees.

Moreover, even if Sheriff Ball's decision not to train Fite on the "contents of the law" was made with a deliberate disregard for other's rights, Parrish still must show that this "deliberate conduct [of] the [county] was the 'moving force' behind the injury alleged." Brown, 520 U.S. at 404 (emphasis omitted). Here, while the district court did make a factual finding regarding the causal link between the county's deliberate misconduct and Parrish's ultimate injury, we find that causal connection too remote as a matter of law to "demonstrate the close relationship necessary to conclude that the

[county's] failure to properly train [Fite] *caused* him" to sexually assault Parrish. Andrews, 98 F.3d at 1077 (third alteration in original).

We recognize that causation is generally a question of fact. Ricketts v. City of Columbia, 36 F.3d 775, 779 (8th Cir. 1994). However, where the causal link is too tenuous such that "the question is so free from doubt as to justify taking it from the [fact finder]" we may decide the issue as a matter of law. Id. 779-80; see also Andrews, 98 F.3d at 1077 (finding that summary judgment was appropriate on the causation issue because the plaintiff "could not even raise[] a question of fact as to causation").

The district court found a causal connection by holding that since Fite would not have sexually assaulted Parrish if he knew he was committing a felony, that training on the contents of the law would have prevented the constitutional violation. Parrish, 2008 WL 4495704, at *3. While this finding may establish "but for" causation, it ignores the additional requirement that "'the identified deficiency in [the county's] training program . . . be closely related to the ultimate injury.'" Andrews, 98 F.3d at 1076 (quoting City of Canton, 489 U.S. at 391); see also Martinez v. California, 444 U.S. 277, 285 (1980) (holding that a constitutional violation was "too remote a consequence" of the defendants' action "to hold them responsible under the federal civil rights law"). As we have noted, in cases such as this where the "'plaintiff claims that the [local government] has not directly inflicted an injury, but nonetheless has caused an employee to do so,'" the causation standard we apply is a "rigorous" one. Szabla v. City of Brooklyn Park, 486 F.3d 385, 390 (8th Cir. 2007) (en banc) (quoting Brown, 520 U.S. at 405).

Here, even though Fite should have been more properly trained on the "contents of the law," Fite's intentional sexual assault of Parrish is too remote a consequence of such a failure to meet the rigorous causation standard necessary to hold the county liable. Indeed, under the district court's findings, even if Fite had been trained that to

sexually assault a detainee was "wrong," the municipality would still be liable for its failure to specifically state that sexual assault constitutes a felony. We see no immediate significant distinction for the purposes of municipal liability between knowing that an act is wrong and knowing that something is so wrong that it is punishable by a year or more of jail time. Since a reasonable officer would know that intentionally sexually assaulting a detainee was inappropriate, and indeed, since Fite himself knew that such conduct was impermissible, Parrish has not demonstrated the close relationship necessary to conclude that the county's failure to train Fite that sexual assault constitutes a felony *caused* Fite to sexually assault Parrish.

We, therefore, hold that Hot Spring County is not liable for its alleged failure to train Fite. Accordingly, we reverse the district court on its finding of official capacity liability for failure to train.

## B.     Individual Capacity – Qualified Immunity

In addition to her allegations of official capacity liability, Parrish also alleged that Sheriff Ball was liable in his individual supervisory capacity for his own failure to train and supervise Fite. The district court granted Sheriff Ball summary judgment on this individual capacity claim, finding that he was entitled to qualified immunity. In her cross-appeal, Parrish challenges this finding.

"We review a district court's qualified immunity determination on summary judgment de novo." Davis v. Hall, 375 F.3d 703, 711 (8th Cir. 2004). Pursuant to this standard, we "view the summary judgment record in the light most favorable to the non-moving party, . . . afford[ing] [her] all reasonable inferences to be drawn from that record." Id. And, we will affirm the entry of summary judgment resting on qualified immunity "if, viewed through this lense, no genuine issue of material facts exists regarding whether the officials' actions, even if unlawful, were objectively reasonable 'in light of the legal rules that were clearly established at the time [the

actions were] taken.'" <u>Id.</u> (alteration in original) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1948 (2009). Thus, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." <u>Id.</u> at 1949. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only "'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'"[1] <u>Otey v. Marshall</u>, 121 F.3d 1150, 1155 (8th Cir. 1997) (quoting <u>Tilson v. Forrest City Police Dep't</u>, 28 F.3d 802, 806 (8th Cir. 1994)); <u>see also</u> <u>Wever v. Lincoln County</u>, 388 F.3d 601, 606-07 (8th Cir. 2004).

Moreover, a supervising officer will not be individually liable for an otherwise unlawful act if he is entitled to qualified immunity. Qualified immunity shields government officials from liability in their individual capacity so long as the official has not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). To overcome the defense of qualified immunity the plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." <u>Howard v. Kansas City Police Dep't</u>, 570

---

[1]The Supreme Court's recent pronouncement in <u>Iqbal</u> may further restrict the incidents in which the "failure to supervise" will result in liability. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949 (noting that a government official can only be liable for his or her own misconduct); <u>see also</u> <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 274 n.7 (1st Cir. 2009). However, we do not address the extent to which <u>Iqbal</u> so limits our supervisory liability precedent because, even under our prior precedent, Sheriff Ball is entitled to qualified immunity.

F.3d 984, 988 (8th Cir. 2009). Recently, the Supreme Court instructed that we are "permitted to exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). Because Sheriff Ball's actions do not amount to the violation of a clearly established constitutional right of which a reasonable person would have known, the second prong of the analysis is dispositive of this case. We, therefore, address only the second prong of the qualified immunity analysis.

Parrish has not alleged that Sheriff Ball ordered, directed, or even suggested that Fite sexually assault Parrish. Thus, Sheriff Ball's alleged liability cannot be based on his direct participation in the constitutional violation. Instead, the cross-appellant avers that Sheriff Ball's liability arises from his alleged failure to supervise and train Fite. For Sheriff Ball to have violated Parrish's constitutional rights by failing to supervise Fite, Parrish must show that Sheriff Ball:

1) Received notice of a pattern of unconstitutional acts committed by subordinates;

2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts;

3) Failed to take sufficient remedial action; and

4) That such failure proximately caused injury to [Parrish].

Jane Doe A v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 645 (8th Cir. 1990); see also Otey, 121 F.3d at 1155 (applying this standard to an allegation that a supervisory officer failed to supervise an inferior officer).

The summary judgment record, even when viewed in a light most favorable to Parrish, reveals nothing that suggests that Sheriff Ball received any notice of a pattern of unconstitutional acts committed by any of Sheriff Ball's subordinates. Moreover,

-12-

pursuant to the parties' stipulation of facts at summary judgment, the parties agreed that Sheriff Ball had no occasion to know that Fite was about to engage in a sexual assault. Thus, a reasonable officer in Sheriff Ball's shoes would not have known that he needed to more closely supervise Fite. Therefore, to the extent that such a failure to supervise may survive Iqbal, Sheriff Ball was, nevertheless, entitled to qualified immunity on such a claim.

We have also noted that a supervisor's failure to train an inferior officer may subject the superior to § 1983 liability in his individual capacity, "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Otey, 121 F.3d at 1156 (quotation omitted). The plaintiff must also prove that the alleged failure to train "actually caused" the constitutional deprivation. Andrews, 98 F.3d at 1078 (applying the same standard from official capacity failure to train to the individual capacity allegation). Thus, it follows that a supervisory officer is entitled to qualified immunity for a § 1983 failure to train action unless a reasonable supervisor would have known that his training program (or lack thereof) was likely to result in the specific constitutional violation at issue. See Gold v. City of Miami, 121 F.3d 1442, 1447 (11th Cir. 1997) (noting that a supervisor is entitled to qualified immunity unless "a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff and his conduct was causally related to the constitutional violation committed by his subordinate" (quotation omitted)).

As we noted in our analysis above, we find that there is no patently obvious need to train officers not to sexually assault women, nor is there a patently obvious need to train officers that if they sexually assault a woman, they may be charged with a felony. Moreover, a reasonable supervisor in Sheriff Ball's position would not know that a failure to specifically train Fite not to sexually assault a woman would cause Fite to engage in that very behavior. Thus, the district court correctly found that Sheriff Ball is entitled to qualified immunity in his individual capacity.

## III.   CONCLUSION

We affirm the district court's grant of qualified immunity to Sheriff Ball in his individual capacity.  But, we reverse the district court's finding of official capacity liability for failure to train and remand for further proceedings consistent with this opinion.

_____