**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 26, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CRYSTAL CASTILLO; LISA GARELL;
ANGELA GAYTAN; DANA REEDER;
NANCY ROBINSON,

     Plaintiffs - Appellants,

v.

RUBY JONES-COOPER; JOHN
LARSEN; BUD DOLAN,

     Defendants - Appellees,

and

ANTHONY BOBELU, in his individual
capacity, a/k/a Tony Bobelu; JANE DOE;
RUSSELL HUMPHRIES, in his individual
capacity; MARY PAVLISKA; JOHN
DOE,

     Defendants.

No. 15-6203
(D.C. No. 5:12-CV-00448-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.
_____

Appellants Crystal Castillo, Lisa Garell, Angela Gaytan, Dana Reeder, and

Nancy Robinson appeal the grant of summary judgment dismissing, on qualified-

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

immunity grounds, their 42 U.S.C. § 1983 claims against Appellees Ruby Jones-Cooper, an Oklahoma Department of Corrections (DOC) supervisor; John Larsen, a DOC supervisor; and Bud Dolan, the State Capitol Park Administrator. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## FACTS

Appellants Crystal Castillo, Lisa Garell, Angela Gaytan, Dana Reeder, and Nancy Robinson are former inmates of the DOC at Hillside Correctional. As part of the prison's offsite prison work program (PPWP), Appellants did landscaping and grounds-maintenance work at the Oklahoma Governor's Mansion. All five women participated in the program at various times between February 2008 and August 2009. While at the Mansion, Appellants' offsite supervisor was Anthony Bobelu, the Mansion's groundskeeper. No guards remained with the inmates at the Mansion.

Appellants allege that Bobelu and Russell Humphries, a cook at the Mansion, harassed and sexually assaulted them. The issue before this court does not directly concern Bobelu and Humphries, so we will not recount the allegations Appellants have made against them. At issue here is what Appellees knew and when they knew it.

Bobelu began working at the Mansion in 2006. Sometime in 2007, a temporary employee (non-inmate) at the Mansion alleged, during a discussion Dolan initiated about her poor-performance issues, that Bobelu had earlier referred to her as a "switch hitter," apparently meaning bisexual. R. vol. 3 at 559. Dolan investigated the allegation but concluded that Bobelu had not said that. According to Dolan, that

2

particular employee had constant performance problems, unlike Bobelu, who had been an exemplary employee. Dolan believed that the employee was attempting to divert attention from her performance issues. The employee was reassigned to another location, and the investigation closed with no repercussions for Bobelu.

In May 2009, Dolan twice observed Bobelu having a one-on-one interaction with two different female inmates. He removed one inmate, Callie Johnson, from the Mansion until she agreed that she would no longer be in one-on-one situations with Bobelu. Dolan also issued verbal and written warnings to Bobelu, reminding him that he should not be in one-on-one situations with inmates. In April 2009, Dolan saw a woman he thought was Johnson driving Bobelu's car. He reported the incident to his supervisor but, because Johnson had been released eight months earlier, they decided that the relationship "was not any of [their] business." *Id.* at 566. At worst, they considered it "poor judgment." *Id.*

On May 29, 2009, Gaytan, who had already been released, requested a letter of recommendation from Dolan. Dolan agreed to write the letter and told her that she could pick it up from either him or Bobelu. Gaytan told him that she didn't want to pick the letter up from Bobelu because she was offended by his actions. When Gaytan came to pick up the letter, Dolan asked for more information, and Gaytan told him about an incident when Bobelu came into an office where Gaytan was alone, shut the door, and made unwelcome sexual advances. Gaytan also told him that Bobelu had done the same to other inmates.

3

Dolan immediately changed Bobelu's work assignment and told Bobelu about Gaytan's allegations. On June 1, Dolan notified the DOC about the situation, and its Administrator of Internal Affairs authorized an investigation. The investigation uncovered a number of other Bobelu incidents, including one in which two inmates alleged that Bobelu had raped them. Bobelu denied all of the allegations. Ultimately, the Department of Central Services (DCS) terminated Bobelu and recommended prosecution.

Appellants appeal the grant of summary judgment to Dolan, Jones-Cooper, and Larsen, which the district court had based on qualified-immunity grounds.

## DISCUSSION

We review de novo a district court's grant of summary judgment. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008). In doing so, we view the evidence and all reasonable inferences from it in the light most favorable to the nonmoving party. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 533 (10th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

All Appellees have asserted a qualified-immunity defense. Qualified immunity protects government officials from suit, not just from liability. *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985). "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly

4

established at the time of defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011)).

To succeed on their claims, Appellants must show that the Appellees acted with deliberate indifference to the risk that the inmates would be sexually assaulted. Deliberate indifference requires that the official know of and disregard a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, the official must know of facts that would allow the inference and must actually infer that there is that risk. *Id.*

The parties dispute whether a continuing-violations theory could apply in a § 1983 case. We assume without deciding that the continuing-violations theory applies here. Thus, we will not address the parties' discussion of whether these incidents constitute discrete acts.

### 1. Dolan is Entitled to Qualified Immunity

Appellants allege that Dolan knew about Bobelu's "multiple incidents of inappropriate conduct." Appellants' Opening Br. at 15. They argue that Dolan inadequately responded to Bobelu's conduct by only issuing him oral warnings. Their claims fail because Appellants have provided no evidence that Dolan knew that Bobelu might sexually assault inmates.

As evidence that Dolan knew about the risks that Bobelu presented, Appellants point to Bobelu's allegedly calling a temporary employee a "switch hitter." R. vol. 3 at 559. Appellants do not argue that Bobelu would have violated the Constitution

5

with this statement, but instead argue that "Dolan's response to this allegation indicates why Defendant Bobelu believed [that he would be able to succeed] and was able to succeed in a sexual predator manner of assaulting multiple female inmates." Appellants' Opening Br. at 16. But nothing overcomes Dolan's position that he disbelieved that Bobelu made the statement because he thought that the temporary employee was trying to deflect attention from her constant poor-performance issues. Until then, Dolan had not heard any complaints against Bobelu.

In addition, Appellants rely on Dolan's having seen Bobelu violate a rule against being in one-on-one situations with female inmates, in particular, Johnson and Garell. Again, nothing in the summary-judgment evidence suggests that these interactions would reasonably cause Dolan to believe that Bobelu presented a risk of sexual assault. At most, Dolan would be concerned about overfamiliarity between Bobelu and the inmates. The deliberate-indifference standard is not a negligence standard—Dolan had to *actually know* of the risk. We agree with the district court that Appellants fail to show that Dolan knew of such a risk. Once he knew of the risk—when Gaytan told him why she did not want to see Bobelu on May 29, 2009— Dolan quickly removed Bobelu from his position. Apart from what Dolan learned from Gaytan, Appellants rely only on their own beliefs that Dolan should have inferred that Bobelu might sexually assault a worker based on unrelated disciplinary incidents. Nothing in the record presents a genuine dispute of material fact that Dolan knew of the risk of sexual assault before meeting with Gaytan. Thus, Appellants have failed to show deliberate indifference sufficient to overcome qualified immunity.

6

### 2. Jones-Cooper is Entitled to Qualified Immunity

Appellants allege that Jones-Cooper's decision to require only eight hours of training for PPWP supervisors was inadequate and exposed female inmates to an unacceptable risk of sexual assault. We disagree.

We are unpersuaded that eight weeks of training, rather than eight hours of training, would have prevented Bobelu's behavior. People should understand without training that they shouldn't sexually assault people because it's a criminal act. *See Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) ("Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior."); *see also Flores v. Cty. of L.A.*, 758 F.3d 1154, 1160 (9th Cir. 2014) ("Given that the penal code prohibits sexual battery, it is not plausible that inclusion in the Manual of [language instructing deputies not to sexually harass or assault inmates] would have prevented the assault . . . ."); *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("[W]e cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women."); *Campbell v. Anderson Cty.*, 695 F. Supp. 2d 764, 774 (E.D. Tenn. 2010) ("Here, the proper course of conduct—refraining from sexual assault and rape—is patent and obvious; structure[d] training programs are not required to instill it." (quotation mark omitted)). Thus, Jones-Cooper's decision on the amount of training PWPP supervisors received is irrelevant to the allegations here.

Appellants claim that Jones-Cooper caused the sexual assaults by not training Dolan sufficiently so that he would have known to terminate Bobelu based on the

earlier incidents. To succeed on a claim for failure to train, the Appellants must prove at the outset that the person who was allegedly inadequately trained violated the Constitution. *See Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1322 (10th Cir. 2009) (discussing excessive force claims); *see also Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010) (noting that "[t]he plaintiff must also prove that the alleged failure to train 'actually caused' the constitutional deprivation" (quoting *Andrews*, 98 F.3d at 1078)). But as discussed above, Dolan was not deliberately indifferent and thus did not violate any clearly established constitutional law in his reaction. Therefore Jones-Cooper is also not responsible.

### 3. Larsen is Entitled to Qualified Immunity

Appellants claim that Larsen is liable for two separate reasons: first, for failure to adequately train Bobelu and second, for deliberate indifference. Appellants' claims against Larsen for failure to train fail for the same reason the claims against Jones-Cooper do.

Appellants' remaining allegations of deliberate indifference against Larsen are insufficient to overcome qualified immunity. Again, deliberate indifference requires actual knowledge of the risk of a constitutional violation. And yet, Appellants repeatedly refer to Larsen's "reckless" behaviors. Appellants' Opening Br. at 23. They refer to what Larsen "should" have done. *Id.* at 22. But Appellants have provided no evidence of actual knowledge. Therefore, Appellants have failed to show deliberate indifference.

**CONCLUSION**

For the reasons stated above, we affirm the district court.

Entered for the Court


Gregory A. Phillips
Circuit Judge