# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-2809
_____

Megan McGuire

*Plaintiff - Appellee*

v.

Cory Cooper

*Defendant*

Timothy F. Dunning, Individually and in his official capacity as Sheriff of
Douglas County, Nebraska

*Defendant - Appellant*

Douglas County

*Defendant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 14, 2019
Filed: March 6, 2020

_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Megan McGuire ("McGuire) was sexually assaulted by Cory Cooper ("Cooper"), a deputy acting within the scope of his employment with the Sheriff's Office in Douglas County, Nebraska. McGuire alleged claims of unreasonable search and seizure, equal protection, due process, supervisory liability, and municipal liability under the Civil Rights Act, 42 U.S.C. § 1983. Sheriff Timothy F. Dunning ("Sheriff Dunning") moved for summary judgment based on qualified immunity. Douglas County also moved for summary judgment. The district court denied both motions. Sheriff Dunning filed this interlocutory appeal, arguing he is entitled to qualified immunity. We reverse with directions to enter judgment in favor of Sheriff Dunning on the basis of qualified immunity.

## I.    Background

At around 8:00 p.m. on February 10, 2013, Cooper, an on-duty deputy officer employed by the Douglas County Sheriff's Office, approached Kyle Worland's truck parked at Zorinsky Lake Park in Omaha, Nebraska. Worland, McGuire's boyfriend, was seated in the driver's seat and McGuire was seated in the passenger's seat. When Cooper approached the passenger side of the truck, he smelled marijuana. While shining his flashlight into the interior of the truck, he observed a mason jar containing marijuana located on the center console.

Cooper took possession of the jar and told McGuire to step out of the truck. Cooper walked McGuire to his patrol car and directed her to sit in the back seat. He put the jar with marijuana on the roof of his car. After ascertaining information about McGuire and Worland, Cooper retrieved Worland from the front seat of his truck and placed him next to McGuire in the back of his patrol car. Cooper proceeded to search Worland's truck and found drug paraphernalia.

After the search, Cooper walked Worland back to his truck and spoke to Worland out of McGuire's earshot. Cooper then returned to his car and informed McGuire that he had "found stuff" and that Worland could go to jail if he reported the incident. Instead of reporting the incident, Cooper began asking McGuire questions about what she would do to keep her boyfriend out of jail. As Cooper was talking to McGuire in the patrol car, Worland walked toward the lake and discarded the drug paraphernalia.

Cooper pressed McGuire for nearly an hour about what she was willing to do to keep her boyfriend out of jail. Confused and scared, McGuire eventually asked Cooper if he wanted her to undress. Cooper purportedly replied, "I am not going to say no" or words to that effect. Cooper stared at McGuire through his rearview mirror while McGuire removed her shirt and bra. Cooper then got out of the front seat, opened McGuire's passenger side door, unzipped his pants, and asked McGuire what else she would do. McGuire performed oral sex on Cooper for about five seconds, at which point Cooper released McGuire and she ran to Worland's truck and they drove away.

McGuire reported the incident to the Omaha Police Department on February 14, 2013. The Omaha Police Department contacted the Douglas County Sheriff's Office about a week later to inform the Sheriff that it was investigating a sexual assault by a law enforcement officer in Zorinsky Lake Park. The Sheriff's Office did not commence its own investigation.

On April 1, 2013, a sheriff's deputy reported that Cooper had a suspicious interaction with a woman with an arrest warrant whom Cooper had asked to meet at a secluded park at 9:00 p.m. Cooper was placed on limited duty status on April 4, 2013. Only after this report of suspicious behavior did the Sheriff's Office commence its own investigation. The Sheriff's Office discovered that Cooper had run a record check on Worland and McGuire, and that the GPS in Cooper's car placed Cooper at

Zorinsky Lake Park on February 10, 2013, at the time of McGuire's assault. Cooper was terminated on May 13, 2013.

In June 2013, Cooper was charged with first degree sexual assault. Cooper pled no contest on April 14, 2015, and was found guilty of third degree assault and attempted tampering with evidence, class I misdemeanors. On June 10, 2015, a state district judge in Douglas County sentenced Cooper to consecutive terms of six months in jail on each count.

At the time of the incident with McGuire, the Douglas County Sheriff's Office did not have a policy of reviewing employees' behavior to determine those at risk for sexual misconduct and it did not have a comprehensive policy addressing sexual misconduct. The Sheriff's Office had implemented, however, a citizen complaint process where citizens could submit complaints for review. Since Sheriff Dunning's appointment in 1995, there had been at least fifteen complaints of sexual misconduct by deputies employed by the Douglas County Sheriff's Office.

As to the claims against Sheriff Dunning and his potential liability, the district court found: (1) because Sheriff Dunning was notified of every citizen complaint regarding deputies under his supervision and he had actual notice of at least eleven complaints of sexual misconduct in his department, a jury could find there was a pattern and practice of Douglas County sheriff deputies involved in inappropriate sexual misconduct; (2) the lack of policies and training on sexual misconduct, the lack of investigation into allegations of sexual misconduct by deputies, and the alleged "cavalier attitude" by the Sheriff was sufficient evidence to give rise to a jury question regarding deliberate indifference; and (3) there was sufficient evidence of a causal link between Sheriff Dunning's failure to train or supervise his employees and Cooper's assaultive behavior such that he is not immune from McGuire's due process, equal protection, and Fourth Amendment claims.

-4-

## II.    Discussion

When reviewing an interlocutory appeal from the denial of a motion for summary judgment, we must first address our jurisdiction.  Austin v. Long, 779 F.3d 522, 524 (8th Cir. 2015) (citing White v. McKinley, 519 F.3d 806, 812 (8th Cir. 2008)).  "Summary judgment 'determinations are appealable when they resolve a dispute concerning an abstract issue of law relating to qualified immunity–typically, the issue whether the federal right allegedly infringed was clearly established.'" Id. (quoting Behrens v. Pelletier, 516 U.S. 299, 313 (1996)).  We lack jurisdiction to consider an interlocutory "appeal if 'at the heart of the argument is a dispute of fact.'" Id. (quoting Pace v. City of Des Moines, 201 F.3d 1050, 1053 (8th Cir. 2000)).

Qualified immunity is a doctrine that "shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Burns v. Eaton, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The party asserting the defense of qualified immunity has the burden of establishing "the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences."  White, 519 F.3d at 813 (citing Pace, 201 F.3d at 1056).  "Because our jurisdiction is limited in an interlocutory appeal from an order denying qualified immunity, we are constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision, to the extent that version is not blatantly contradicted by the record."  Thompson v. Murray, 800 F.3d 979, 983 (8th Cir. 2015) (cleaned up).

Even in the absence of an allegation of direct participation in a constitutional violation, a supervising officer may still face liability for an alleged failure to train and supervise subordinates.  Parrish v. Ball, 594 F.3d 993, 1002 (8th Cir. 2010).  In order to establish a claim for failing to supervise Cooper, McGuire must show that Sheriff Dunning: "1) Received notice of a pattern of unconstitutional acts committed

by subordinates; 2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts; 3) Failed to take sufficient remedial action; and 4) That such failure proximately caused injury to [McGuire]." Parrish, 594 F.3d at 1002 (quoting Jane Doe A v. Special Sch. Dist. of St. Louis Cty., 901 F.2d 642, 645 (8th Cir. 1990)).

Sheriff Dunning contends that, even taking in a light most favorable to McGuire all of the reported incidents of prior sexual misconduct by deputies employed by the Sheriff's Office, he is entitled to qualified immunity because these incidents are insufficient to provide notice that an on-duty deputy might sexually assault a member of the public like Cooper did. The circumstances of the prior incidents are contained in the record at paragraph 86 of Sheriff Dunning's declaration dated March 28, 2018. The district court listed in a footnote fifteen prior incidents of sexual misconduct that Sheriff Dunning knew about, but neither made detailed findings regarding them nor reasoned how they were similar to the sexual misconduct at issue in this case.

Constraining ourselves to the version of facts in the record that the district court assumed or likely assumed in favor of McGuire, we conclude that the prior instances of sexual misconduct are not similar in kind or sufficiently egregious in nature to demonstrate a pattern of sexual assault against members of the public by deputies. In order to establish a pattern, our case law requires a showing of more than general allegations of a wide variety of sexual misconduct. It requires the other misconduct to "be very similar to the conduct giving rise to liability." Livers v. Schenck, 700 F.3d 340, 356 (8th Cir. 2012). Put another way, the conduct must be "sufficiently egregious in nature." S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015).

In this case, the other misconduct included trading cigarettes for a detainee's display of her breasts; licking a minor stepdaughter's nipples during horseplay; asking "deeply personal and inappropriate questions" to members of the public;

engaging in verbal sexual harassment; having consensual sexual contact at the office; and abusing work hours to conduct personal business or ask women out on a date. While this behavior is troubling, it is not enough to put a supervising official on notice that a deputy might use his position and authority to separate a woman from her boyfriend at the park and coerce her to engage in sexual contact with him. The summary judgment record, even when viewed in a light most favorable to McGuire, fails to establish that Sheriff Dunning received notice of a pattern of similar unconstitutional acts being committed by his subordinates. A reasonable officer in Sheriff Dunning's position would not have known that he needed to more closely supervise his deputies, including Cooper, or they might sexually assault a member of the public.

A supervisor's failure to train an inferior officer may also give rise to individual liability under § 1983 if (1) "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," Parrish, 594 F.3d at 1002 (quoting Otey v. Marshall, 121 F.3d 1150, 1156 (8th Cir. 1997)), and (2) "the alleged failure to train 'actually caused' the constitutional deprivation." Id. (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996)). We have previously explained "that there is no patently obvious need to train officers not to sexually assault women, nor is there a patently obvious need to train officers that if they sexually assault a woman, they may be charged with a felony." Id. A reasonable supervisor in Sheriff Dunning's position would not know that a failure to specifically train Cooper not to sexually assault a woman would cause Cooper to engage in that behavior. Parrish, 594 F.3d at 1002–03; Andrews, 98 F.3d at 1078. Sheriff Dunning is entitled to qualified immunity in his individual capacity.

## III.  Conclusion

We reverse the district court's decision and direct the court to enter judgment in favor of Sheriff Dunning on the basis of qualified immunity.

_____